IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-01970-MSK-MJW

ALAN L. WATTS, on behalf of himself and all others similarly situated,

       Plaintiff,

v.

AMERICAN EXPRESS COMPANY, and
AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.,

       Defendants.

_____

**OPINION AND ORDER DENYING MOTIONS AS MOOT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss **(# 8)**, the Plaintiff's response **(# 17)**, the Defendants' reply **(# 23)**, the Plaintiff's surreply **(# 24)**; the Defendants' Motion to Strike **(# 33)** the Plaintiff's surreply, and the Plaintiff's response **(#38)**; the Defendants' Motion to Seal **(# 44)**; and the Plaintiff's Motion to Certify Class **(# 45)**, the Defendants' response **(# 53)**, and the Plaintiff's reply **(# 56)**.

The core factual allegations in this case are fairly simple. In 2002, the Plaintiff was a victim of identity theft, with the thieves opening several American Express ("Amex") accounts in his name. The Plaintiff contacted Amex, and in 2003, after an investigation, Amex closed the accounts, absolved the Plaintiff of any liability for them, and assured the Plaintiff that and collections and credit reporting activity relating to the accounts would cease. Nevertheless, Amex continued to report negative information about the Plaintiff to credit reporting agencies

1

through May 2006, when the error was finally rectified.  On at least six occasions in the Fall of 2006, Amex accessed the Plaintiff's credit file through a credit reporting agency, advising the agency that it was entitled to the information because the Plaintiff was either involved in a business transaction with Amex, or the company was seeking to review the status of an existing Amex account with the Plaintiff.  Neither statement was accurate.

In the initial Complaint **(# 1)**, the Plaintiff asserted a single cause of action for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(b), in that Amex's accessing of his credit records in Fall 2006, without a statutorily-permitted purpose, constitutes a violation of the law.  In addition, the Plaintiff sought to assert that claim on behalf of a class of persons "whose consumer credit reports were accessed by Amex at a time when Amex did not have a credit relationship with said persons [as such relationship is defined in the FCRA] during the two year period prior to the filing of this action."  The Plaintiff sought, among other things, injunctive relief against Amex.

Amex moved to dismiss **(# 8)** the request for injunctive relief, on the grounds that injunctive relief under the FCRA is not available to private plaintiffs, and to dismiss the class allegations, on the ground that the invocation of FCRA standards in defining the class rendered the definition of the class effectively synonymous with the merits of the claim – *i.e.* that in essence, the class consisted of "those persons whose FCRA rights can be shown to have been violated."  The Plaintiff's response **(# 17)** conceded the injunctive relief issue and expressed the Plaintiff's intention to file an Amended Complaint that clarified the class definition. Simultaneously, he filed an Amended Complaint **(# 16)** that defined the proposed class as those persons "who did not have a credit relationship with Amex at the time that Amex accessed their

consumer credit file . . ." within the two years preceding the Complaint.

Rather than address the Amended Complaint in a new motion, Amex filed a reply **(# 23)** that contended that the class definition in the Amended Complaint failed to cure the original defect, insofar as it continued to define the class by reference to the existence of a "credit relationship," a term that required interpretation of the FCRA to define. Deeming the reply to constitute a new motion to dismiss, to which he would be entitled to respond, the Plaintiff filed a surreply **(# 24)** defending the pleading of the amended class allegations. Amex then moved **(#33)** to strike the surreply as unauthorized.

The Plaintiff then moved to certify **(# 45)** a class.[1] The putative class was not that defined in the then-pending Amended Complaint, but rather, one defined by an entirely new definition: all persons "whose credit filed was accessed on or after September 12, 2006 by [Amex] for the certified purpose of conducting an 'account review' and whose account, at the time of the access, was not an open account or a closed account with a balance owing to [Amex]." Before Amex responded, and without obtaining leave of the Court,[2] the Plaintiff then filed a Second Amended Complaint **(# 52)**. This new pleading posed yet another new iteration

---

[1]In anticipation of the material to be relied upon by the Plaintiff's class certification motion, Amex moved to seal **(# 44)** certain documents it believed would be submitted as exhibits in support of or in opposition to the motion for class certification. The documents to be sealed fall into three categories: (i) a spreadsheet showing certain Amex account holders, listed by name and account numbers; (ii) portions of a Data Management and Services Agreement between Amex and a credit reporting agency that contains, among other things, pricing information that is deemed to constitute trade secrets; and (iii) information from Amex setting forth details about the operation of its account monitor system, which Amex contends constitutes trade secret information.

[2]Having already filed one Amended Complaint as of right under Fed. R. Civ. P. 15(a)(1), all future amendments by the Plaintiff must be accompanied by either Amex's consent or leave of the Court. Fed. R. Civ. P. 15(a)(2).

of the proposed class definition; it contained the language quoted above from the Plaintiff's class certification motion, but added an additional clarifying sentence: "The class consists primarily of fraud or identity theft victims, zero balance closed accounts, and accounts discharged in bankruptcy, but may also include accounts of deceased persons, settled accounts, or others."

Amex responded **(# 53)** to the class certification motion raising numerous objections. Most importantly, Amex contended that the new class definition[3] vastly exceeds the scope of the individual claim the Plaintiff purports to assert – *i.e.* that the Plaintiff's own claim does not involve "zero balance closed accounts," "accounts discharged in bankruptcy," "accounts of deceased persons," or "settled accounts." In his reply **(# 56)**, the Plaintiff apparently concedes the overbreadth of his proposed class definition, and proposes the certification of a class as established by yet another definition: all persons "whom [Amex] has accepted their accounts as identity theft/fraud accounts and yet conducted one or more account reviews on or after September 12, 2006." The Plaintiff goes on to argue that, under this new definition, most of the Defendants' prior objections are rendered moot and certification is appropriate.

This Court observes that the Plaintiff's class allegations have been constantly moving targets throughout this case. The Plaintiff has proposed at least five different definitions for his proposed class, at least three of which were offered in response to motions or responses in opposition by Amex. Although the Court appreciates the willingness of the Plaintiff to narrow and sharpen the issues in dispute, the Court expects the parties to do so through private conferral and discussion, not through the motion briefing process. Indeed, the purpose of D.C. Colo. L.

---

[3] Amex's responds quotes the more extensive definition contained in the Second Amended Complaint.

Civ. R. 7.1(A)'an s conferral requirement is to require parties to discuss not only the moving party's intention to file a motion and seek certain relief, but to discuss the grounds upon which the motion is made and the arguments in support of it, such that a party can recognize situations where its adversary's argument has some merit and take appropriate action to rectify issues <u>before</u> the parties expend time and effort in motion practice.  Here, had the parties properly conferred in the spirit of Local Rule 7.1(A), nearly all of the briefing to date could have been avoided, and the Plaintiff's reply in support of its motion for class certification would be the first substantive motion filed in this case.

At this point, the Court declines to consider the pending motion for class certification on the record as it currently stands.  The latest iteration of the Plaintiff's proposed definition is sufficiently distinct from those discussed in prior briefing that the Court is not comfortable in assuming that the briefing to date supplies the Court with the parties' most fully-considered and best-articulated arguments regarding the relative merits of the latest definition.

Accordingly, the Court denies the pending motion for class certification as moot, and permit the Plaintiff to file, within 20 days of the date of this Order, a renewed motion for class certification that sets forth the precise class definition the Plaintiff intends to rely upon and argument as to the appropriateness of that definition.  The Court further cautions the Plaintiff that **no further refinements of the definition proposed in the newly-filed motion will thereafter be permitted**.  The Plaintiff has had nearly three full years to contemplate and refine the contours of the claims in this case; it may not continually do so.

There remains some housekeeping to do with regard to the remaining motions.  The contours of this case having evolved well beyond the arguments contained in Amex's Motion to

Dismiss **(# 8)**, that motion is denied as moot.  That denial is sufficient to render the Plaintiff's surreply brief in support of that motion moot as well, and thus, Amex's Motion to Strike **(# 33)** that surreply is also rendered moot.  The Court also takes this opportunity to reflect on Amex's motion to seal certain exhibits to the class certification motion.

The Supreme Court acknowledged a common-law right of access to judicial records in *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978).  This right is premised upon the recognition that public monitoring of the courts fosters important values such as respect for the legal system.  *See In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002).  Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society."  *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996) (J. Kane).  Thus, there is a presumption that documents essential to the judicial process are to be available to the public, but they may be sealed when the public's right of access is outweighed by interests which favor nondisclosure.  *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997).  It is within the district court's discretion to determine whether a particular court document should be sealed.  *See Nixon,* 435 U.S at 599.  D.C. Colo. L. Civ. R. 7.2 requires that the sealing of court records be supported by "compelling" reasons.  Such a showing is required to ensure public confidence in the judicial process.  It is critical that the public be able to review the factual basis of this Court's decisions and evaluate the Court's rationale so that it may be confident that the Court is functioning as a neutral arbiter.  *Cf. McVeigh*, 119 F.3d at 814.

In this analysis, the parties' agreement that a particular document is confidential is irrelevant, as is the fact that a document was subject to a protective order during discovery. Protective orders – most of which are stipulated to by the parties – are intended to govern the

parties' relationships *vis-a-vis* each other regarding documents that are exchanged privately in discovery. As private agreements relating to discovery, they do not operate to define or limit the scope of the public's interest in documents that are filed with the Court in conjunction with a request for Court-awarded relief. Thus, the mere fact that a document is encompassed by a Protective Order is insufficient (and in general, irrelevant) to demonstrate that the document should be sealed away from public view when it is filed in conjunction with a request for judicial relief.

Here, because the Court has not considered the merits of the motion for class certification, it has also not considered the exhibits in support of that motion, including those sought to be sealed by Amex. Because the Court has not considered the motions, the public interest in having access to those exhibits to assess the wisdom of the Court's analysis is minimal. *See Riker v. Federal Bureau of Prisons*, 315 Fed.Appx. 752, 755 (10th Cir. 2009) (unpublished). With no significant public interest warranting access to the documents, the Court can deny the motion to seal as moot, but to preserve whatever privacy interests the parties may have in the documents (interests the Court does not necessarily find to exist), the Court will allow the documents to remain under seal on the Court's public docket.

This is not to say that, if the same documents are submitted in conjunction with a renewed motion for class certification, the Court will permit them to remain under seal. A cursory review of the three categories of documents described in the motion raises questions as to whether the facts to be established by the documents – or by the sensitive aspects of the documents' contents – are essential to the class certification issue. For example, Amex anticipated that the parties might rely upon a spreadsheet showing account holders, account

numbers, and account balances, apparently relating to the element of numerosity.  However, it is by no means clear to the Court that the private material in the spreadsheets – names, account numbers, and balances – is essential to demonstrating numerosity, such that redaction of the sensitive information would destroy the spreadsheets' evidentiary value.  Alternatively, the relevant fact demonstrated by the spreadsheets – say that X number of account holders' data was accessed – is a matter that can likely be presented by stipulation, ameliorating the need to submit the spreadsheets entirely.   Other material, such as the pricing structure of the agreement between Amex and the credit reporting agency, is of little apparent relevance to the class certification issue.  Indeed, the Court's admittedly abbreviated review of the class certification motion reveals no instance in which deposition exhibit 25, the agreement sought to be sealed, is mentioned.

In the Court's experience, many motions to seal can be avoided entirely by a combination of disciplined scrutiny of the actual relevance of the material sought to be sealed, coupled with discussion between the parties concerning stipulation to facts not in dispute and careful redaction where appropriate.  Any future motion to seal that may be filed in this case should reflect the extent to which the parties have availed themselves of these tools and the reasons why they are an inadequate substitute for submission of the documents under seal.

Accordingly, for the foregoing reasons, the Defendants' Motion to Dismiss **(# 8)** and  the Defendants' Motion to Strike **(# 33)** the Plaintiff's surreply are **DENIED AS MOOT**. The Defendants' Motion to Seal **(# 44)** is **DENIED AS MOOT**, but for the reasons stated herein, the documents currently under seal in this action shall remain sealed.  The Plaintiff's Motion to Certify Class **(# 45)** is **DENIED AS MOOT**.  Within 20 days of the date of this Order, the Plaintiff may refile a suitably supported motion for class certification.

Dated this 8th day of September 2009

                                            **BY THE COURT:**

                                            Marcia S. Krieger
                                            United States District Judge

9